EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramón Luis Santiago Cora<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | Certiorari<br><br>2025 TSPR 44<br><br>215 DPR ___ |

Número del Caso: CC-2024-0119


Fecha: 30 de abril de 2025


Tribunal de Apelaciones:

     Panel IV

Oficina del Procurador General:

     Hon. Fernando Figueroa Santiago
     Procurador General

     Lcda. Mabel Sotomayor Hernández
     Subprocuradora General

     Lcda. Yara I. Alma Bonilla
     Procuradora General Auxiliar

     Lcda. Aracelis Burgos Reyes
     Procuradora General Auxiliar

Representante legal de la parte recurrida:

     Lcdo. Diego Ledeé Bazán


Materia: Derecho Constitucional y Ley de Huellas Digitales y Fotografías por Delito Grave – Inexistencia de una obligación de devolver las fotografías de fichaje y las huellas dactilares de una persona que extinguió una sentencia penal, y logró eliminar su convicción del Certificado de Antecedentes Penales; clasificación como archivo confidencial.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Luis Santiago Cora

    Recurrido

      v.

                              CC-2024-0119

Estado Libre Asociado de Puerto Rico

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 30 de abril de 2025.

En esta ocasión nos vemos precisados a dirimir una disyuntiva que ha suscitado interpretaciones variadas y antagónicas entre las distintas instancias del Poder Judicial. En específico, nos corresponde resolver si el Estado está obligado a devolver las fotografías de fichaje y las huellas dactilares de una persona que extinguió una sentencia penal, y logró eliminar su convicción del Certificado de Antecedentes Penales.

Adelantamos que en escenarios como el descrito, no existe una expectativa razonable de intimidad sobre los datos de identificación obtenidos durante el curso

de un arresto válido. Tampoco existe una obligación estatutaria de entregarle sus fotos y huellas dactilares a la persona que cumplió una sentencia por la comisión de un delito. Por el contrario, las fotografías, huellas dactilares y datos recopilados son útiles para la investigación de crímenes futuros. El que no se pueda imputar reincidencia no altera esa realidad. No obstante, una vez se obtiene una orden judicial para la eliminación del historial penal, la información de identificación retenida por el Estado debe conservarse bajo la clasificación de archivo confidencial.

I

El 9 de febrero de 2023, el Sr. Ramón Luis Santiago Cora presentó una *Petición ex parte* al amparo de la Ley Núm. 314-2004, infra, en la que solicitó al Tribunal de Primera Instancia que ordenara la eliminación de sus antecedentes penales, así como la devolución de las huellas digitales y fotografías obtenidas durante su arresto. El expediente penal del señor Santiago Cora reflejaba una condena por agresión agravada, según tipificada en el Artículo 95(c) del Código Penal de 1974 (derogado). Por este delito fue sentenciado a pena de multa, el 15 de junio de 1998. El señor Santiago Cora arguyó que la infracción cometida no estaba sujeta al Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores, ni al Registro de Personas Convictas por Corrupción. En su solicitud, expuso que habían transcurrido más de cinco años desde que cumplió la sentencia y que gozaba de buena reputación moral en su comunidad. Sustentó esto último mediante dos declaraciones juradas.

Así las cosas, el Tribunal de Primera Instancia celebró la vista de rigor y en ausencia de objeción por parte del Ministerio Público, declaró con lugar la solicitud del señor Santiago Cora respecto a la eliminación de los antecedentes de su historial penal. Como consecuencia, el 12 de mayo de 2023 se notificó una orden en la cual se le requirió al Superintendente de la Policía y al Sistema de Información de Justicia Criminal del Departamento de Justicia eliminar la convicción del Certificado de Antecedentes Penales del señor Santiago Cora. No obstante, el foro primario eludió expresarse sobre el asunto de la devolución de fotos y huellas dactilares.

Al realizar el trámite pertinente ante la Policía de Puerto Rico, el señor Santiago Cora solicitó que se le devolvieran sus huellas dactilares y fotografías. Sin embargo, esta autoridad rehusó acceder a la petición, bajo el fundamento de que el Tribunal de Primera Instancia no lo había autorizado en su resolución.

Insatisfecho, el señor Santiago Cora compareció al foro primario mediante una moción para que se enmendara la resolución previamente emitida y se ordenara la devolución de las huellas y fotografías. Luego de varios trámites procesales, sin la comparecencia del Estado, el Tribunal de Primera Instancia declaró lo siguiente: "No ha lugar. La ley provee un procedimiento para la eliminación de convicciones del Certificado de Antecedentes Penales, nada se establece sobre la entrega de fotografías y huellas dactilares al peticionario". Véase, Ap. del certiorari, pág. 14.

Inconforme, el señor Santiago Cora acudió ante el Tribunal de Apelaciones. Primero, señaló que el foro primario erró al negarse a entregar las fotografías y huellas dactilares, a pesar de que el Estado no objetó la devolución solicitada. En segundo lugar, arguyó que el Tribunal de Primera Instancia descartó sin mayor análisis el precedente judicial sobre la materia en cuestión y obvió los hechos particulares de su caso. Añadió que habían trascurrido más de veinticinco (25) años desde su convicción y que la retención de sus datos no tenía ninguna utilidad para el Gobierno.

Sucesivamente, el Estado compareció y aseveró que la Ley Núm. 314-2004, infra, solo permite la eliminación de una convicción del Certificado de Antecedentes Penales, más no provee un mecanismo legal para la devolución de los datos de identificación incidentales al arresto. Añadió que la devolución de huellas dactilares y fotografías estaba regulada de forma independiente por la Ley Núm. 45-1983, infra. No obstante, a juicio del Estado el señor Santiago Cora no era acreedor del remedio de devolución, pues únicamente son elegibles para ello las personas que son absueltas o reciben un indulto total y absoluto por parte del Gobernador.

Tras recibir el insumo de las partes, el 13 de diciembre de 2023 el Tribunal de Apelaciones notificó una sentencia en la que revocó la determinación del Tribunal de Primera Instancia. En síntesis, el foro intermedio razonó que la retención de las huellas digitales y fotografías del señor Santiago Cora constituía una intromisión con su derecho a la intimidad, dado que ya este había extinguido su sentencia y

no se le podía imputar reincidencia. Además, coligió que la interferencia gubernamental debía examinarse al rigor del escrutinio estricto. A base de lo anterior, concluyó que el Estado no justificó la necesidad de retener la información personal del señor Santiago Cora.

En desacuerdo, el 28 de diciembre de 2023 el Estado presentó una solicitud de reconsideración. Nuevamente enfatizó que, debido a que el señor Santiago Cora no fue absuelto ni indultado por el Gobernador, no correspondía devolverle las huellas dactilares ni las fotografías del fichaje. Enunció que la petición del señor Santiago Cora se realizó al amparo de la Ley Núm. 314-2004, _infra_, que únicamente regula el proceso para eliminar el historial de antecedentes penales. El Estado también señaló que este beneficio se concibe como cuestión de política pública para evitar el estigma y las dificultades de reinserción laboral derivadas de la constancia pública de una condena. Sin embargo, insistió en que las huellas dactilares y las fotografías de un exconvicto son un instrumento investigativo de gran envergadura para la protección de la seguridad pública.

Tras denegarse la reconsideración solicitada, el Estado compareció ante nos mediante el recurso de _certiorari_ de epígrafe. En esencia, solicita que revoquemos la determinación del Tribunal de Apelaciones. Insiste en que los tribunales carecen de autoridad legal para ordenar la devolución de las fotografías y huellas dactilares de una persona convicta y

sentenciada por la comisión de un delito, como lo es el señor Santiago Cora.

A la par, el Estado argumenta que es improcedente reconocerle al señor Santiago Cora un derecho de intimidad sobre sus huellas y fotografías, pues en principio, él no alberga una expectativa razonable de intimidad sobre los datos de identificación incidentales al arresto. Afirma, además, que no existe ningún riesgo de divulgación que pueda afectar su vida privada, ya que al haberse eliminado su historial criminal, las huellas y fotos se guardan de forma confidencial en una base de datos de la Policía. En fin, el Gobierno hace hincapié en que tener una base de datos sólida para investigar y combatir el crimen supera cualquier inconveniencia personal por la retención de datos de identificación.

Por otra parte, el señor Santiago Cora —en su alegato— ante nos reitera que la retención de sus fotografías y huellas dactilares lesiona su derecho a la intimidad. Afirma que no existe justificación constitucional para retener de por vida su información personal cuando no es posible imputarle reincidencia por un delito ocurrido hace más de 25 años.

Expedido el auto de *certiorari*, y con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

### A. *Eliminación de antecedentes penales*

Con el propósito de adelantar la política pública de rehabilitación penal y promover la reinserción social de la población correccional, la Asamblea Legislativa aprobó la Ley Núm. 314 de 15 septiembre de 2004, que enmendó la Ley Núm.

254 de 27 de julio de 1974, conocida como la Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales, 34 LPRA sec. 1725a-2. A raíz de la enmienda, el Art. 4 de la Ley Núm. 254, supra, instauró un mecanismo para la eliminación de una convicción por delito grave del Certificado de Antecedentes Penales.

En consonancia, las personas convictas por delito grave que no estén sujetas al Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores ni al Registro de Personas Convictas por Corrupción, pueden solicitar al Tribunal de Primera Instancia que se elimine su convicción del historial de antecedentes penales, en las circunstancias siguientes:

> (a) que hayan transcurrido cinco (5) años desde que cumplió la sentencia y durante ese tiempo no haya cometido delito alguno;
>
> (b) que tenga buena reputación en la comunidad; y
>
> (c) que se haya sometido a la muestra requerida por la Ley del Banco de Datos de ADN, de estar sujeta a ello.
>
> El peticionario acompañará los documentos necesarios para probar las alegaciones de su petición. El Ministerio Público podrá oponerse o allanarse a la petición, en cuyo caso no será necesario celebrar vista. Art. 4 de la Ley Núm. 254, supra, 34 LPRA sec. 1725a-2.

Sobre esta disposición estatutaria, hemos expresado que "la legislatura procuró potenciar la inserción de los exconvictos en la fuerza laboral y su consiguiente rehabilitación mediante la eliminación de convicciones previas transcurrido el término dispuesto en ley". Garib

Bazaín v. Hosp. Aux. Mutuo *et al.*, 204 DPR 601, 622 (2020). El estatuto "se funda en las consecuencias a posteriori una vez ejecutada una sentencia penal. No intenta anularla, dejarla sin efecto o corregirla. Por el contrario, parte del supuesto de que la misma fue legal, correcta y cumplida". Pueblo v. Ortiz Martínez, 123 DPR 820, 830 (1989). Empero, los tribunales no pueden tomar en consideración las convicciones borradas. Íd., pág. 832. Una vez se ordena la eliminación de una convicción, esta debe ser excluida de todo registro o constancia ante las autoridades de orden público concernientes. Íd., pág. 831.

### B. *Devolución de fotografías y huellas dactilares*

El manejo de la información obtenida durante el fichaje policial está regulado por la Ley Núm. 45 de 1 de junio de 1983, conocida como la Ley de Huellas Digitales y Fotografías por Delito Grave, 25 LPRA sec. 1151 *et seq*. La Exposición de Motivos de la ley refrenda:

> El uso de las huellas digitales como forma de identificar a las personas es aceptado y reconocido. Se ha sostenido que la toma de huellas digitales y fotografías son procedimientos usuales y necesarios para la labor de la policía en protección de la seguridad pública y en la persecución del crimen. Esta práctica corresponde a los poderes inherentes de la Policía.

Como corolario, el Art. 1 de la Ley Núm. 45, supra, preceptúa que la Policía de Puerto Rico "deberá tomarle las huellas digitales y fotografiar a cualquier persona a la que, previa determinación de causa probable para arresto, se le impute la comisión de un delito grave". Íd., 25 LPRA sec. 1151.

Más adelante, el Art. 4 delimita las circunstancias en las cuales se podrán devolver tanto las huellas digitales como las fotografías de una persona imputada de delito. El precitado artículo establece:

> Cualquier persona a la que se le impute la comisión de [u]n delito grave o menos grave producto de una misma transacción o evento que **resulte absuelta luego del juicio correspondiente, o por orden o resolución del Tribunal o toda persona que reciba un indulto total y absoluto del Gobernador, podrá solicitar al Tribunal, la devolución de las huellas digitales y fotografías.** (Énfasis suplido). Art. 4 de la Ley Núm. 45, <u>supra</u>, 25 LPRA sec. 1154.

De una lectura del Art. 4 de la Ley Núm. 45, <u>supra</u>, se desprende que el legislador habilitó el mecanismo de devolución de fotos y huellas dactilares únicamente para las personas que fueran absueltas o indultadas de forma total y absoluta por el Gobernador. <u>Íd</u>. De hecho, al aprobarse inicialmente la Ley Núm. 45, <u>supra</u>, el estatuto solamente contemplaba que las personas absueltas podían solicitar la devolución de su información de fichaje. Posteriormente, a través de la Ley Núm. 4 de 22 de noviembre de 1989, se enmendó el Art. 4 de la Ley Núm. 45, <u>supra</u>, y se extendió este mecanismo para las personas que recibieran un indulto total y absoluto por parte del Gobernador. Al introducir esta enmienda, la Asamblea Legislativa consignó que: "[c]on el propósito de completar y darle vigencia real al acto del indulto, esta medida propone otorgarle al indultado el **beneficio** de solicitar la devolución de las huellas digitales y las fotografías que le fueron tomadas durante el proceso criminal". (Negrilla suplida). Exposición de Motivos de la Ley Núm. 4 de 22 de noviembre de 1989. Debemos tener en cuenta

que los indultos absolutos "absuelve[n] al infractor de todas las consecuencias, directas o colaterales, y por ende, de la condena, por lo que este queda liberado de cualquier castigo". Pueblo v. Arlequín Vélez, 204 DPR 117, 136 (2020). Véase, además, Ex Parte Garland, 71 U.S. 333, 342 (1866). Para todos los efectos, una vez concedido el indulto total, y sin necesidad de aceptación, se elimina la condena como si nunca hubiera existido. Pueblo v. Arlequín Vélez, supra, pág. 141.

Por otro lado, en lo atinente al aspecto procesal para la devolución de fotografías y huellas digitales, el propio Art. 4 provee que "[e]l peticionario notificará al Ministerio Público y de [e]ste no presentar objeción dentro del término de diez días, el Tribunal **podrá** ordenar, sin vista, la devolución solicitada. De haber objeción del Ministerio Público, el Tribunal señalará vista pública a esos efectos". (Negrilla suplida). Íd., 25 LPRA sec. 1154.

Anteriormente, en Pueblo v. Torres Albertorio, 115 DPR 128 (1984), evaluamos si el término "podrá" incluido en el Art. 4, supra, implicaba que el tribunal tenía discreción para conceder o denegar una solicitud de devolución de imágenes y huellas, cuando el solicitante cumpliera con todos los criterios de la ley. En aquel entonces, una persona acusada de apropiación ilegal y que posteriormente fue absuelta, solicitó la devolución de las fotografías y huellas digitales que se le tomaron durante el arresto.

Al respecto, resolvimos que en esos casos una solicitud puede denegarse únicamente si se justifica ante el tribunal, mediante prueba convincente, "que existen circunstancias

especiales que ameriten que la Policía conserve, en cuanto a la persona afectada, las huellas digitales y fotografías que le hubieren sido tomadas". Pueblo v. Torres Albertorio, supra, pág. 136. Si se justificara la retención, la información deberá permanecer en los archivos de la Policía de forma confidencial, para uso exclusivo de esta agencia. Íd., págs. 136-137. En ese momento, este Tribunal entendió que la retención arbitraria de los datos de identificación dejaba de tener significado cuando la persona resultaba exonerada de delito. Íd., pág. 136. En concreto, esbozamos:

> La retención por la Policía de las fotografías y huellas dactilares tomadas a una persona que es luego exonerada de delito, aparte de constituir, por su posible divulgación, un factor que afecta a la persona en múltiples aspectos de su vida económica y en sus oportunidades educativas y de empleo, podría constituir, mientras no se le devuelvan, una invasión de su derecho a la intimidad. Pueblo v. Torres Albertorio, supra, pág. 135.

Sin embargo, reiteramos la norma respecto a que la toma de huellas dactilares y fotografías es permisible "por su doble propósito de identificar al imputado como la persona que incurrió en el acto delictivo y ayudar a su procesamiento si reincidiere". Íd., pág. 130.

Ahora bien, anteriormente, en Archevali v. E.L.A., 110 DPR 767 (1981), este Tribunal tuvo por primera vez la encomienda de expresarse sobre el tema de la devolución de las huellas digitales y fotografías tomadas durante un arresto. En esa ocasión, la controversia surgió luego de que la Sra. Carmen Archevali fuera declarada culpable del delito de expedir cheques sin fondos. Mientras se encontraba

pendiente un recurso de apelación respecto a su convicción, esta acudió al Tribunal Superior mediante una petición de *mandamus*, para que se ordenara la eliminación del fichaje al que había sido sometida y se le devolvieran los documentos pertinentes.

Empero, al atender la controversia resolvimos que, debido a que la peticionaria había sido declarada culpable "no proced[ía] la devolución del récord de investigación, ni las fotografías ni las huellas digitales". Archevali v. E.L.A., supra, pág. 771.   Al así resolver, explicamos que esa información era de utilidad para el Estado en caso de que la persona reincidiera en otros delitos. Íd. A su vez, enunciamos que "la toma de huellas digitales y de fotografías son procedimientos usuales y necesarios para la labor de la Policía en protección de la seguridad pública y en la persecución del crimen". Íd. Véase, además, People v. McInnis, 494 P.2d 690, 692 (1972).

A la par, el Tribunal Supremo de Estados Unidos ha expresado que la identidad de un individuo es más que simplemente su nombre o número de Seguro Social, y que el interés del gobierno en la identificación va más allá de garantizar que se escriba el nombre correcto en la acusación. Maryland v. King, 569 U.S. 435, 450 (2013). Específicamente, el Tribunal Supremo de Estados Unidos estableció:

> By identifying not only who the arrestee is but also what other available records disclose about his past to show who he is, the police can ensure that they have the proper person under arrest and that they have made the necessary arrangements for his custody; and, just as important, they can also

> prevent suspicion against or prosecution of the innocent. Íd., págs. 460-461.

Es decir, la preservación de los datos de identificación de un convicto también puede jugar un papel importante en la protección de personas inocentes. De este modo, el proceso de identificación también conlleva una protección de la ciudadanía en general.

**C. *Derecho a la intimidad en el ámbito penal***

La Carta de Derechos de la Constitución de Puerto Rico dispone que "toda persona tiene derecho a protección de la ley contra ataques abusivos a su honra, a su reputación y a su vida privada". Art. II, Sec. 8, Const. PR, LPRA, Tomo 1. El derecho a la intimidad es un derecho fundamental que opera *ex proprio vigore* y puede invocarse frente a personas privadas. López Tristani v. Maldonado, 168 DPR 838, 849 (2006); Arroyo v. Rattan Specialties, Inc., 117 DPR 35 (1986); Figueroa Ferrer v. ELA, 107 DPR 250 (1978).

Sin embargo, a pesar de su jerarquía, esta garantía constitucional no es de carácter absoluto ni supera todo valor en conflicto. Indulac v. Unión, 207 DPR 279, 303 (2021). Ante todo, "su objetivo básico es proteger el ámbito de intimidad y dignidad del individuo frente a actuaciones arbitrarias del Estado". Pueblo v. Yip Berríos, 142 DPR 386, 397 (1997). Por este motivo, "[l]a intromisión en la vida privada s[o]lo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad públicas o el derecho a la vida y a la felicidad del ser humano afectado". García Santiago v. Acosta, 104 DPR 321, 324 (1975).

Dicho esto, conviene puntualizar que el derecho a la intimidad se reconoce únicamente cuando la persona que la invoca tiene una expectativa razonable de intimidad. Pueblo v. Santiago Feliciano, 139 DPR 361, 390 (1995). O sea que, para invocar exitosamente la protección constitucional es imperativo que se demuestre que el agraviado tiene una expectativa subjetiva real de que su intimidad se respete, y que la sociedad considera razonable albergar esa expectativa. Siaca v. Bahía Beach Resort, 194 DPR 559, 608 (2016); Acarón et al. v. D.R.N.A., 186 DPR 564, 577 (2012); López Tristani v. Maldonado, supra, pág. 852.

Empero, "la expectativa de intimidad que un individuo pueda tener en circunstancias relacionadas directamente con la comisión de un acto criminal es **limitada**". (Negrilla suplida). "Así lo determinaron quienes redactaron nuestra Constitución". Pueblo v. Santiago Feliciano, supra, pág. 390. Sobre el particular, el Informe de la Comisión de la Carta de Derechos incluido en el Diario de Sesiones de la Convención Constituyente expresó:

> La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. El hogar, los muebles y utensilios, los libros y papeles poseídos por un ciudadano son como una prolongación de su persona, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. (…)
>
> Sin embargo, los mismos medios y propiedades que sirven para el desarrollo y el sostén de la persona pueden ser instrumento de delito o resultado de su comisión. En estos casos detenerse ante esas fronteras de la personalidad equivaldría a la protección indebida del delito y del delincuente. En esta colisión de lo privado y lo público, la solución se entrega, con todas las garantías, a la autoridad judicial encargada de perseguir y sancionar las transgresiones de la ley. **Las garantías personales**

**frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal.** (Énfasis suplido). 4 *Diario de Sesiones de la Convención Constituyente de Puerto Rico* 2567 (1961).

En sintonía, el Tribunal Supremo de Estados Unidos ha resuelto que la expectativa de intimidad de una persona que es puesta bajo custodia policial necesariamente tiene un alcance reducido. Maryland v. King, supra, pág. 462; Bell v. Wolfish, 441 U.S. 520, 557 (1979). Es por ello que, previo a reconocer el derecho a la intimidad y aplicar el escrutinio estricto, debemos examinar si existe una expectativa razonable de intimidad y si las acciones de la persona afectada demuestran inequívocamente la intención de albergar esa expectativa. Pueblo v. Ortiz Rodríguez, 147 DPR 433, 442 (1999). A estos efectos, el Profesor Chiesa Aponte expresa que "de lo que se trata es de un balance de intereses entre el grado de expectativa razonable a la intimidad e intereses apremiantes del Estado. De ahí que la protección es tanto mayor como sea mayor la expectativa razonable a la intimidad". Véase, E. Chiesa, *Derecho Procesal Penal de Puerto Rico y los Estados Unidos*, 1era ed., Colombia, Tercer Mundo Editores, 1991, Tomo I, Sec. 6.13(B), págs. 406-407.

### III

En el recurso ante nuestra consideración, el Estado asevera que el Tribunal de Apelaciones erró al determinar que procedía la devolución de los datos de identificación del señor Santiago Cora, por dos razones. Primero, porque la Asamblea Legislativa no le confirió autoridad estatutaria a los tribunales para ordenar la devolución de fotografías y

huellas dactilares de las personas convictas de delito. Segundo, porque ante la convicción del señor Santiago Cora, no procedía reconocerle una expectativa de intimidad sobre la retención de sus datos de identidad en los archivos confidenciales de la Policía. Por estar estrechamente relacionados, procedemos a resolver ambos señalamientos de manera conjunta.

Como vimos, el Art. 4 de la Ley Núm. 45, supra, únicamente vislumbra que pueden solicitar la devolución de fotos y huellas dactilares las personas que: (1) resultaron absueltas, o (2) recibieron un indulto total y absoluto del Gobernador. Ninguno de esos supuestos se encuentra presente en la controversia que nos ocupa.

Nótese que al aprobar la Ley Núm. 45, supra, la Asamblea Legislativa tenía pleno conocimiento del precedente establecido en el caso Archevali v. E.L.A., supra, pág. 771, en lo referente a que no procede la devolución de las fotografías y huellas digitales de una persona que fue declarada culpable de delito. De hecho, fue precisamente lo resuelto en *Archevali*, lo que inspiró en gran medida la aprobación de la Ley Núm. 45, supra. Esto quedó plasmado en la Exposición de Motivos del mencionado estatuto, donde la Asamblea Legislativa consignó que "[e]l Tribunal Supremo en el caso Archevali (…) señaló que se ha sostenido que la práctica de tomar huellas digitales y fotografías de los acusados y de los convictos está autorizada implícitamente en los poderes y facultades de la Policía". Exposición de Motivos de la Ley Núm. 45, supra. De igual modo, cabe destacar que la

enmienda que extendió el beneficio de la devolución de datos de fichaje a quienes recibieran un indulto total y absoluto se aprobó con posterioridad a lo resuelto por este Tribunal en Pueblo v. Torres Albertorio, supra. Véase, Ley Núm. 4 de 22 de noviembre de 1989. Adviértase que, con arreglo al aludido precedente judicial, se le reconoció un margen limitado de discreción a los tribunales para denegar el remedio de la devolución de fotografías y huellas, incluso en los casos donde media absolución o indulto total. Pueblo v. Torres Albertorio, supra. Debidamente informado de la jurisprudencia vigente en la materia que hoy nos atañe, el legislador ha mantenido intacto el estado de derecho que no confiere el beneficio de la obtención de datos de fichaje a quienes, como el señor Santiago Cora, cumplieron condena por la comisión de un delito.

Ahora bien, la controversia de marras plantea unas particularidades no contempladas en *Torres Albertorio* y *Archevali,* y que no pasaremos por alto en el ejercicio de nuestra tarea interpretativa. Entiéndase que, en esta ocasión, quien solicita la devolución de fotografías y huellas dactilares, si bien extinguió una sentencia condenatoria, no está sujeto a la imputación de reincidencia y logró la eliminación de su historial delictivo. De ahí yace el argumento del señor Santiago Cora de que rehusar a entregarle los mencionados datos de identificación constituye una intromisión con su derecho a la intimidad. Rechazamos esta interpretación.

Primero, es imperioso reiterar que la expectativa de intimidad de una persona que es arrestada válidamente es limitada. Pueblo v. Santiago Feliciano, supra, pág. 390. Del Informe de la Comisión de la Carta de Derechos de la Constitución de Puerto Rico se desprende que "las garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal". 4 *Diario de Sesiones*, supra, pág. 2567. En otras palabras, el vigor de la protección constitucional cede ante la conducta delictiva. Si bien la Carta de Derechos de la Constitución se conceptualiza como un documento de factura ancha, es claro que la intención original de los constituyentes no fue extender las mismas salvaguardas a la intimidad de quienes se conducen con menosprecio de la ley.

En esa coyuntura, la persona que extingue una sentencia criminal no alberga una expectativa razonable de intimidad frente al Estado sobre los datos de identificación accesorios a su arresto. Por un lado —en lo concerniente al proceso de toma de fotografías y huellas dactilares— no es posible reconocer a la persona arrestada una expectativa subjetiva real de que su intimidad no se afecte. Por otro lado, se trata de un proceso tan avalado y rutinario que la sociedad no considera razonable albergar una expectativa de intimidad en esas circunstancias.

Lo que sí podría reconocérsele a la persona exconvicta, al cumplirse los escenarios contemplados por la ley, es un derecho estatutario a que se le conceda el beneficio de eliminar su historial criminal del Certificado de Antecedentes

Penales. Esto se reconoce como una cuestión de política pública y no como un derecho constitucional. Su propósito es propender a la reinserción social del individuo y evitar las trabas que pudiera propiciar la constancia pública de su conducta delictiva. A diferencia de los escenarios de absolución e indulto total, el beneficio de la eliminación de antecedes penales parte del supuesto básico de que se cometió un delito por el cual ya se cumplió una pena. Véase, Pueblo v. Ortiz Martínez, supra, pág. 830.

Naturalmente, para darle plena vigencia a los efectos de la legislación, una vez se ordena borrar la constancia de una convicción, no se puede mantener ningún registro público de esta, ni aludirla en procedimientos judiciales posteriores. Ese es precisamente el caso del señor Santiago Cora.

Dado que no puede darse una dicotomía que anule los efectos de la Ley Núm. 314-2004, las huellas dactilares y fotografías de las personas cuyo historial criminal ha sido borrado pueden permanecer retenidas siempre y cuando se mantengan bajo un estricto margen de confidencialidad. Al custodiarse como un archivo confidencial, se elude el riesgo y los efectos nocivos que pudiera tener la divulgación de esta información en el ámbito de la vida privada del individuo.

Así pues, en el balance de los intereses en pugna, la protección de la seguridad pública supera cualquier incomodidad personal generada por la retención por parte del Estado de la información de identificación incidental al arresto válido. De ese modo, se logra mantener una base de datos robusta que le permite a las autoridades ejercer

cabalmente su imprescindible labor investigativa para atajar la criminalidad. Este es un punto neurálgico en nuestra controversia, pues en su sentencia, el Tribunal de Apelaciones concluyó que, al haber transcurrido el plazo estatutario para imputar reincidencia, no tiene utilidad que el Estado permanezca con esta información. No le asiste la razón.

Según reseñamos previamente, la toma de huellas dactilares y fotografías cumple la importante doble función de identificar a la persona y ayudar a procesarle si reincidiere. Indubitablemente, la reincidencia como agravante estatutario puede invocarse por un periodo limitado de tiempo. Sin embargo, es un escenario para el cual el Estado puede estar preparado a través de una base de datos sólida.

En algún momento expresamos que "**[l]a forma más confiable de identificación es mediante la comparación de huellas digitales**". (Negrilla suplida). <u>Pueblo v. Sánchez Delgado</u>, 99 DPR 260, 263 (1970). Aún con los avances tecnológicos que puedan haberse alcanzado en esta disciplina, la utilidad del método de identificación dactilar continúa siendo indiscutible. Además, es innegable el valor de los métodos modernos de identificación que usan fotografías como punto de referencia. Esta información no solo es eficaz para señalar a una persona como autor de delito, sino también para evitar que se le procese erróneamente. La no disponibilidad de la reincidencia como agravante no altera ese análisis.

En fin, reiteramos que en casos como el que nos ocupa, donde la probabilidad de divulgación de datos personales es ínfima, el interés público se antepone a la indeseabilidad de

que el Estado conserve de forma confidencial las huellas dactilares y fotografías incidentales a un arresto válido.

IV

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones y se desestima la petición *ex parte* que presentó el señor Santiago Cora.

Se dictará Sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Luis Santiago Cora

    Recurrido

        v.                       CC-2024-0119

Estado Libre Asociado de Puerto Rico

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se desestima la petición *ex parte* que presentó el señor Santiago Cora.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez concurre con el resultado sin opinión escrita. El Juez Asociado señor Colón Pérez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo