Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **ROSA VILLAFAÑE VIVO**<br><br>Apelante<br><br>v.<br><br>**SEA CAVE FOOD CORP. Y OTROS**<br><br>Apelados | KLAN202500178 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **Bayamón**<br><br>Caso Número: BY2024CV05951 (SALON 501)<br><br>Sobre:<br>**DESPIDO INJUSTIFICADO (LEY NUM. 80) Y OTROS** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparece ante nos Rosa Villafañe Vivo, en adelante, Villafañe Vivo o apelante, solicitando que revoquemos la *"Resolución Interlocutoria"* notificada el 16 de enero de 2025 y la *"Sentencia Parcial"* notificada el 29 de enero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante, TPI-Bayamón. En el primer dictamen, el Foro Primario desestimó la demanda de epígrafe contra Sea Cave Food Corp., en adelante, Sea Cave o apelada, y en el segundo, las causas de acción de la apelante por discrimen.

Por los fundamentos que expondremos a continuación, *confirmamos* los dictámenes apelados.

**I.**

Rolando Jatib Campos, en adelante, Jatib Campos o apelado, es el Presidente de Sea Cave. En el año 2017, la apelante, que en

aquel momento era esposa de Jatib Campos, comenzó a trabajar para la compañía apelada.[1]

Sin embargo, alega la apelante que en el año 2023, cuando comenzaron los trámites para el divorcio, comenzó a ser víctima de hostigamiento y persecución en el trabajo. Posteriormente, el 6 de marzo de 2024, Villafañe Vivo se divorció del apelado.[2]

Por estos hechos, el 2 de octubre de 2024, Villafañe Vivo incoó una *"Demanda"* contra Jatib Campos ante el TPI-Bayamón por Discrimen, Hostigamiento, Represalias y Despido Injustificado.[3] En su *primera causa de acción*, la apelante sostiene que el despido de su trabajo en Sea Cave fue injustificado, por lo que procede una mesada no menor de veintiséis mil dólares ($26,000.00). En su *segunda causa de acción*, Villafañe Vivo aduce que su despido fue discriminatorio por razón de estatus marital y posterior divorcio con el Presidente de la compañía apelada. En su t*ercera y última causa de acción*, esta mantiene que su despido respondió a las represalias tomadas en su contra por ambos apelados. En fin, solicitó la suma de novecientos mil dólares ($900,000.00) por los ingresos y beneficios no percibidos, una cantidad no menor de un millón de dólares ($1,000,000.00) por las angustias mentales y una suma adicional de veinticinco por ciento (25%) en concepto de honorarios de abogado.

Por su parte, Sea Cave presentó su *"Contestación a Demanda"* y una *"Moción de Desestimación"*, el 20 de diciembre de 2024.[4] En esta última, el apelado suplicó al Foro Apelado que emitiera una sentencia parcial para desestimar la segunda y tercera causa de acción de la demanda de epígrafe contra Sea Cave.[5] Además, Jatib Campos presentó una moción, el 8 de enero de 2025, ante el TPI-

---

[1] Apéndice del recurso, pág. 1.
[2] *Id.*, pág. 1.
[3] *Id.*
[4] *Id.*, págs. 7 y 17.
[5] *Id.*, pág. 16.

Bayamón, solicitando la desestimación de la demanda en su contra.[6] Por su parte, Villafañe Vivo presentó una *"Moción en Oposición a Desestimación Presentadas por las Demandadas Sea Cave Food y Rolando Jatib"*.[7]

Así las cosas, el 16 de enero de 2025, el Foro Recurrido emitió una *"Resolución Interlocutoria"* en la que declaró *"No Ha Lugar"* la solicitud de desestimación de Jatib Campos, arguyendo que las alegaciones en su contra en la demanda son en carácter de Presidente de Sea Cave.[8] No obstante, declaró *"Ha Lugar"* la solicitud de desestimación presentada por Sea Cave, en cuanto a las causas de acción por Discrimen y Represalias. Además, informó que emitiría una *"Sentencia Parcial"* al respecto. Inconforme, ese mismo día, Villafañe Vivo presentó una *"Moción en Solicitud de Reconsideración"*.[9] El 17 de enero de 2025, el TPI-Bayamón declaró la misma "No Ha Lugar".[10]

Aún en desacuerdo, la apelante recurrió ante nos, el 27 de enero de 2025, mediante un recurso de *"Certiorari"* para impugnar la referida determinación del Foro Primario.[11] Sin embargo, desestimamos el mismo por prematuro, toda vez que el TPI-Bayamón aún no había emitido la sentencia correspondiente.

Ahora bien, el 29 de enero de 2025, el Foro Primario emitió una *"Sentencia Parcial"*, en la que desestimó parcialmente la demanda de la apelante contra Sea Cave.[12] Jatib Campos presentó una *"Moción de Reconsideración"* el 31 de enero de 2025.[13] Mediante *"Resolución Interlocutoria"* del 3 de febrero de 2025, el Foro Apelado declaró *"Ha Lugar"* la reconsideración, e indicó que notificaría la

---

[6] Apéndice del recurso, pág. 28.
[7] *Id.*, pág. 39.
[8] *Id.*, pág. 6.
[9] *Id.*, pág. 49.
[10] *Id.*, pág. 56.
[11] KLCE202500073.
[12] Apéndice del recurso, pág. 58.
[13] *Id.*, pág. 85.

correspondiente *"Sentencia Parcial"*.[14] Por su parte, la apelante también le solicitó al Foro Apelado que reconsiderara, mediante moción del 11 de febrero de 2025.[15] Al día siguiente, el TPI-Bayamón declinó la solicitud de reconsideración de Villafañe Vivo.[16]

Así las cosas, el 25 de febrero de 2025, el TPI-Bayamón notificó una segunda *"Sentencia Parcial"* en la que desestimó todas las causas de acción contra Jatib Campos.[17] Inconforme, el 4 de marzo de 2025, la apelante radicó un recurso de *"Apelación"* ante esta Curia, haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el Tribunal de Primera Instancia al desestimar la causa de acción contra el codemandado Sea Cave bajo la Ley 115 de Represalias.
> **SEGUNDO ERROR:** Erró el Tribunal de Primera Instancia al desestimar la causa de acción contra el codemandado Sea Cave bajo la Ley 100 de Discrimen.
> **TERCER ERROR:** Erró el Tribunal de Primera Instancia al no reconocer que la demanda sustenta una reclamación de daños por Hostigamiento Sexual y Lesión al Derecho de Intimidad.
> **CUARTO ERROR:** Erró el Tribunal de Primera Instancia al desestimar todas las causas contra el codemandado Jatib Campos.

Mediante *"Resolución"* del 6 de marzo de 2025, concedimos a la parte apelada hasta el 4 de abril de 2025 para presentar su posición en cuanto al recurso, conforme a lo dispuesto en la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22.

Durante los días 2, 3 y 4 de abril de 2025, los apelados presentaron varias mociones. El 2 de abril de 2025, Jatib Campos nos solicitó que desestimáramos el caso de autos por falta de jurisdicción. Por su parte, el 3 de abril de 2025, Sea Cave radicó ante nos el *"Alegato de la Parte Apelada"*. Finalmente, el 4 de abril de 2025, Jatib Campos compareció nuevamente mediante *"Alegato en Oposición a 'Apelación'"*.

---

[14] Apéndice del recurso, pág. 94.
[15] *Id.*, pág. 65.
[16] *Id.*, pág. 73.
[17] SUMAC, Entrada Número 51.

El 11 de abril de 2025, mediante *"Resolución"* declaramos *"No Ha Lugar"* la solicitud de desestimación de Jatib Campos. Con el beneficio de la comparecencia de todas las partes del caso, y perfeccionado el recurso que nos ocupa, procedemos a resolver.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán et al. v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Véase, además, *Freire Ruiz et al v. Morales, Hernández,* 2024 TSPR 129, 214 DPR ___ (2024). Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241,

252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones, salvo que se pruebe que este actuó con perjuicio, parcialidad, error manifiesto o en abuso de discreción. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

### B. Ley de Represalias

La Ley de Represalias, supra, es una herramienta estatutaria que provee protección a empleados que ofrecen testimonio, expresión o información de algún tipo, ya sea verbal o escrita, ante un foro legislativo, *administrativo* o judicial en Puerto Rico. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 668-669 (2017); *Cordero Jiménez v. UPR*, 188 DPR 129, 136 (2013); *Rentas Santiago v. Autogermana, Inc.*, 182 DPR 759, 765 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 361 (2009).

La misma es una legislación de carácter reparador, anclada en la política pública del estado, con respecto a la protección de los derechos de los trabajadores, por lo que su interpretación judicial debe ser liberal y amplia, de manera que se alcancen los objetivos que la originaron. De esta manera, se garantiza la mayor protección de los derechos laborales de los trabajadores. En este proceso interpretativo, toda duda en cuanto a su aplicación deberá

resolverse a favor del empleado. *Cordero Jiménez v. UPR*, supra, pág. 138.

La precitada Ley define al empleado como "cualquier persona que preste servicios a cambio de salarios, o cualquier tipo de remuneración, mediante un contrato oral, escrito, explícito o implícito, incluyendo a los porteadores públicos [...]". Artículo 1 de la Ley de Represalias, supra, sec. 194. Establece además que "'Patrono', significa todos los patronos por igual, sean estos patronos públicos o privados, corporaciones públicas, dueños de la carga y corredor de transporte [...]". *Id.*

Esta pieza legislativa no ha sufrido grandes cambios a través de los años, pero al momento de los hechos del caso de marras, el Artículo 2 (a) de la Ley en cuestión disponía que:

> *Ningún patrono* podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, *cualquier testimonio, expresión o información* ante un foro legislativo, administrativo o judicial de Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

> Ley de Represalias, supra, sec. 194b.
> (Énfasis suplido).
> *Rentas Santiago v. Autogermana, Inc.*, supra.

Posteriormente, durante los años 2014 y 2024, se introdujeron unas enmiendas al precitado Artículo, a los fines de ampliar el alcance protector de la Ley. De esta manera, quedó fijado, no solo en el espíritu del texto, sino en su letra, que la acción protegida de los empleados podrá ampararse en esta Ley en el contexto de procesos internos – no solo cuando se haga ante foros judiciales, legislativos o administrativos. Ley Núm. 169-2014 y Ley Núm. 81-2024.

Ahora bien, el Artículo 2 (c) de la Ley de Represalias, *supra*, sec. 194b, dispone que el empleado podrá establecer su caso *prima facie*. Para ello, solo tendrá que probar haber incurrido en una actividad protegida por esta Ley, y haber sido despedido subsiguientemente. En el esquema probatorio de este escenario, establece el estatuto que una vez el empleado pruebe su causa de manera *prima facie*, es responsabilidad del patrono establecer que el despido se debió a una razón no discriminatoria. Para prevalecer en su causa de acción, luego de establecido lo anterior, el empleado deberá probar que esta razón fue un pretexto para su despido.

En *Rivera Menéndez v. Action Service*, 185 DPR 431, 445-446 (2012), el Tribunal Supremo resumió lo anterior de la siguiente manera:

> La ley crea una presunción *"juris tantum"* de violación a ésta a favor del querellante, al disponer que éste establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado en el empleo. Una vez el querellante establece de forma prima facie su caso, el patrono deberá alegar y fundamentar que tuvo una razón legítima y no discriminatoria para el despido. Ante esto, el empleado aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio.

Finalmente, la naturaleza reparadora de esta Ley provee para que el empleado afectado pueda recibir ciertas reparaciones. Cuando se prospere en una causa de acción al amparo de esta Ley, el empleado tendrá derechos a que se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. Además, establece que los daños sufridos y los salarios no devengados, estarán sujetos a una doble cuantía. Artículo 2 (b) de la Ley de Represalias, *supra*, sec. 194b.

### C. Discrimen por Razón de Sexo

En otra vertiente, nuestro sistema constitucional protege al ciudadano puertorriqueño contra todo acto de discrimen. El Artículo II, sec. 1 de la Constitución dispone que "[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas".[18] Los referidos postulados constitucionales fueron ratificados por la Asamblea Legislativa mediante la aprobación de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como la "Ley Antidiscrimen de Puerto Rico", 29 LPRA sec. 146 *et seq; Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR ___ (2025).

Por su parte, el antedicho estatuto define al *patrono* como "toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica". Artículo 6 de Ley Núm. 100, supra, sec. 151.

El estatuto aludido es uno de los que sanciona el discrimen en el empleo. *Díaz Santiago v. International Textiles*, 195 DPR 862, 872 (2016). En su Artículo 1, 29 LPRA sec. 146, dicha legislación decreta que todo patrono que despida, suspenda o discrimine contra un empleado suyo "por razón de edad, según ésta se define más adelante, raza, color, sexo, orientación sexual, identidad de género, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, o por ser militar, ex-militar, servir o haber servido en las Fuerzas Armadas de los Estados Unidos o por ostentar la condición de veterano del empleado o solicitante de empleo, o por tener peinados protectores y texturas

---

[18] Artículo II, Sec. 1, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 275.

de cabello que regularmente se asocian con identidades de raza y origen nacional particulares". Véase, además, *Soto y otros v. Sky Caterers*, supra. Además, en consonancia con su propósito, el Artículo 3 de la Ley Núm. 100, supra, 29 LPRA sec. 148, crea una presunción rebatible de que el despido de un empleado por causa de los motivos reseñados es discriminatorio, salvo que el patrono demuestre la existencia de justa causa para tal determinación. *Alberty v. Bco. Gub. De Fomento*, 149 DPR 655, 663 (1999).

Los elementos esenciales para una causa de acción por despido discriminatorio de la Ley Núm. 100 son los siguientes: el empleado fue despedido, *sin justa causa* y existe la modalidad del discrimen alegado. *Díaz Santiago v. International Textiles*, supra, pág. 873, citando Arts. 1 y 3 de la Ley Núm. 100, 29 LPRA secs. 146 y 148; *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 387 (2001). Una vez el empleado cumple con los elementos arriba mencionados, se activa la presunción de discrimen y se revierte el peso probatorio al patrono, quien tendrá el deber de rebatirla. En otras palabras, una vez el empleado establece las circunstancias esenciales para que el juzgador pueda asumir el hecho presumido de que el despido o acción perjudicial se realizó sin justa causa, se invierte la carga probatoria. Como consecuencia, el patrono deberá demostrar con preponderancia de la prueba que el despido no fue discriminatorio, esto es, presentar evidencia de calidad suficiente para convencer al juzgador que la existencia del discrimen era menos probable que su inexistencia. *López Fantauzzi v. 100% Natural*, 181 DPR 92, 124 (2011); *Díaz v. Wyndham Hotel Corp.*, supra, a las págs. 386-387; *Odriozola v. S. Cosmetic Dist. Corp.*, 116 DPR 485, 502 (1985); *Ibáñez v. Molinos de P.R., Inc.*, 114 DPR 42, 53 (1983).

Aun si el patrono derrota la presunción, todavía el demandante puede presentar prueba dirigida a establecer la existencia de discrimen. El empleado puede presentar evidencia

para probar que realmente hubo un despido discriminatorio, pero esta vez lo tendrá que hacer sin el beneficio de la presunción. Tendrá que presentar evidencia de incidentes o hechos que prueben dicho discrimen o de los cuales se pueda inferir la alegada actuación discriminatoria. *López Fantauzzi v. 100% Natural*, supra, págs. 122-123; *S.L.G. Hernandez-Beltrán v. TOLIC*, 151 DPR 754, 774 (2000). De tal manera, únicamente si el demandante prueba que el patrono incurrió en conducta discriminatoria, estará obligado a indemnizar al empleado por los daños sufridos a causa del discrimen. *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 69-70 (2008). Esto así, ya que el propósito de la Ley Núm. 100, y la presunción por ella provista, "es facilitarle al empleado el probar su caso, no el relevarlo de la necesidad de presentar evidencia alguna para probar sus alegaciones". *S.L.G. Hernandez-Beltrán v. TOLIC*, supra, pág. 774.

### D. Hostigamiento Sexual

La Constitución del Estado Libre Asociado en su Carta de Derechos, Artículo II, Sec. 1, 1 LPRA, establece que la dignidad del ser humano es inviolable y que todas las personas son iguales ante la Ley. Se consagra como principio fundamental, el derecho de toda persona a la protección contra ataques abusivos a su honra, reputación y vida privada o familiar. *Íd.*, Artículo II, Sec. 8. Véase, además, *Santiago Cora v. ELA*, 2025 TSPR 44, 215 DPR ___ (2025); *Indulac v. Unión*, 207 DPR 301-302 (2021); *López Tristani v. Maldonado*, 168 DPR 838, 849 (2006); *Albino v. Ángel Martínez, Inc.,* 171 DPR 457, 470 (2007); *S.L.G. Afanador v. Roger Electric Co., Inc.,* 156 DPR 651, 661 (2002); *Arroyo v. Rattan Specialties*, Inc., 117 DPR 35, 54 (1986).

Para poner en vigor dicho mandato constitucional se ha legislado para proveer a todo empleado los recursos necesarios para protegerlos de prácticas discriminatorias. Entre éstos, se encuentra

la Ley para Garantizar la Igualdad de Derecho al Empleo, Ley Número 69 de 6 de julio de 1985, 29 LPRA 1321 *et seq.*, estatuto que fue adoptada para prohibir de forma específica el *discrimen en el empleo por razón de género* y prohíbe que el patrono tome una decisión laboral adversa por razón de género. Además, mediante la Ley Para Prohibir el Hostigamiento Sexual en el Empleo, Ley Número 17 de 17 del 22 de abril de 1988, 29 LPRA sec. 155 *et seq.*, se prohibe el *hostigamiento sexual*, y declara a ésta una forma de discrimen por razón de género que atenta contra la dignidad humana. Este estatuto fija responsabilidades e impone penalidades a actuaciones que contravengan esta disposición.

La Ley en cuestión define al empleado, quien recibe los efectos protectores de la Ley Núm. 17, supra, como "que trabaja para un patrono y que reciba compensación por ello o todo aspirante a empleo". Artículo 2 de la Ley Núm. 17, supra, sec. 155a. Además, expone que patrono es "toda persona natural o jurídica de cualquier índole, El Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo cada una de sus tres (3) Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales que con ánimo de lucro o sin él emplee personas mediante cualquier clase de compensación y sus agentes y supervisores". *Id.*

La Asamblea Legislativa, en el Artículo 3 de la Ley Núm. 17, supra, sec. 155b, definió el hostigamiento sexual en el empleo. Consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico. *Indulac v. Unión,* supra, pág. 307. Ocurre cuando se da una o más de las circunstancias descritas en

la Ley, a saber: (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición de empleo de una persona; (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona; (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente intimidante, hostil u ofensivo. Ley Núm. 17, supra, sec. 155b; *Indulac v. Unión,* supra, págs. 307-308.

El Artículo 10 de la Ley Núm. 17, supra, sec. 155i, establece los deberes del patrono, a saber:

> *Todo patrono* tiene el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad. Cumpliendo con la obligación que se le impone al patrono de prevenir, desalentar y evitar el hostigamiento sexual en el empleo, éste deberá tomar las medidas que sean necesarias o convenientes con ese propósito incluyendo, pero sin limitarse, a las siguientes:
>
> (a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.
>
> (b) Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.
>
> (c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo las secs. 155 a 155m de este título, al amparo de las secs. 1321 a 1341 de este título, las secs. 146 a 151 de este título y de la Constitución del Estado Libre Asociado de Puerto Rico.
>
> (d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual.
>
> *Indulac v. Unión,* supra, pág. 307

**III.**

La apelante recurre ante esta Curia haciendo varios señalamientos de error. En síntesis, aduce que el Foro Primario se equivocó al desestimar casi todas las causas de acción contra Sea Cave, y todas las causas de acción contra Jatib Campos. La apelante propone que, al amparo de los estatutos y la jurisprudencia sobre el discrimen por estatus marital, represalias y hostigamiento sexual, tiene una acción contra los aquí apelados. *No le asiste la razón.* Por estar íntimamente relacionados, discutiremos el *primer, segundo y tercer señalamiento de error* en conjunto.

Si bien es cierto que, despedir a una empleada porque esta haya decidido divorciarse de su patrono, resulta en una conducta antijurídica, la apelante presentó su reclamo al amparo de varios estatutos laborales que no compaginan con las circunstancias extracontractuales de sus alegaciones. Para poder prevalecer en sus causas de acción por represalias, discrimen y hostigamiento sexual, las circunstancias del pleito deben poder justificar un remedio al amparo de estas Leyes. Como bien dispuso el Foro Apelado, el estatus marital no es un móvil que pueda contraponerse a la legislación laboral. Veamos.

Como esbozáramos previamente, la Ley de Represalias, supra, requiere que para que exista un remedio en virtud de ella, un empleado haya sido despedido por hacer expresiones privilegiadas ante un foro judicial, administrativo o legislativo. En estos casos, se prueban de manera prima facie las represalias, por lo que corresponde al patrono ripostar la presunción en su contra.

Por su parte, para que una demanda laboral por discrimen prospere, es necesario que se haya dado un despido injustificado, y exista una modalidad de discrimen. Como vimos, estas modalidades, establecidas de la Ley Núm. 100 y la jurisprudencia

son de naturaleza taxativa. En su demanda, la apelante alega haber sido víctima de discrimen en la modalidad de sexo, y así lo sostiene ante nos.

Además, según el derecho previamente reseñado, nuestro ordenamiento jurídico ha estatuido que el hostigamiento sexual en el trabajo es un tipo de discrimen por razón de género. Este puede materializarse cuando el empleo de una persona es afectado por rechazar una conducta de naturaleza sexual.

En su demanda, la apelante descansa únicamente en su divorcio para alegar represalias en su contra. Aduce, por otro lado, que a consecución del divorcio, perdió su trabajo, por lo que es víctima de discrimen por razón de sexo y de género, al amparo de la Ley de Núm. 17, supra. Sostiene que la decisión de separarse de su esposo es un rechazo a una conducta de naturaleza sexual que redundó en su despido. Ahora bien, el TPI-Bayamón concluyó que divorciarse no es una alegación adecuada al amparo de los precitados estatutos. Por ello, nos cuestiona la apelante "[q]ué más se tiene que alegar si las alegaciones tienen que ser sucintas y sencillas?".

Si el estatus marital fuese una declaración privilegiada al amparo de la Ley de Represalias, supra, la alegación de Villafañe Vivo establecería una presunción a su favor. Sin embargo, del texto de la Ley, y de la jurisprudencia interpretativa, no surge que el cambio en estatus marital sea una expresión o declaración privilegiada que justifique la concesión de un remedio por virtud del antedicho estatuto.

Por otro lado, solicitar el divorcio tampoco es una modalidad de discrimen que justifique un remedio al amparo de la Ley Núm. 100 y la Ley Núm. 17. No nos convence el postulado de la apelante, quien intenta equiparar el acto civil perfectamente adecuado en

derecho de divorciarse, con la conducta antijurídica del discrimen y el hostigamiento sexual.

Finalmente, con relación al *último y cuarto señalamiento de error,* Villafañe Vivo presentó todas las antedichas causas de acción, y otras de naturaleza laboral, contra Jatib Campos en su carácter personal. Sostiene que, aunque lo demandó personalmente, responde por ser el presidente de Sea Cave. Sin embargo, ambos son personas jurídicas distintas. Contrario a lo alegado en su escrito de apelación, la parte apelante no presentó una acción de daños contra Jatib Campos, bajo la teoría general, en virtud del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 10801. Lo cierto es que, como vimos previamente, las causas de acción que nos ocupan son de carácter laboral. Según fueron definidas en la legislación, Jatib Campos no es "patrono" de la apelante en su carácter personal, para responder por estas causas de acción.

## IV.

Por los fundamentos que anteceden, *confirmamos el dictamen apelado en su totalidad.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones