Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ORLANDO HERRERA ROQUE<br><br>APELANTE<br><br>v.<br><br>NEGOCIADO DE LA POLICÍA DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>APELADOS | TA2025AP00406 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2025CV06918<br><br>Sobre: Revisión Administrativa sobre Denegatoria de Licencia de Armas (Ley 168-2019) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

# SENTENCIA

En San Juan, Puerto Rico, a 21 de noviembre de 2025.

## I.

El 4 de octubre de 2025, el señor Orlando Herrera Roque (señor Herrera Roque o apelante) presentó una *Apelación* en la que solicitó que revoquemos una Sentencia emitida, notificada y archivada digitalmente por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 5 de septiembre de 2025.[1] En el dictamen, el TPI desestimó una *Petición* promovida por el apelante impugnando una denegatoria de la Oficina de Licencias de Armas del Negociado de la Policía de Puerto Rico (NPPR o parte apelada) para que le expida una licencia de armas.

El 8 de octubre de 2025, emitimos una *Resolución* en la que le concedimos al NPPR hasta el 3 de noviembre de 2025 para presentar su alegato en oposición.

El 30 de octubre de 2025, el NPPR presentó su *Alegato en Oposición* en el que solicitó que confirmemos la *Sentencia* apelada.

---

[1] Véase la entrada núm. 16 del expediente digital del caso en el Sistema Unificado de Manejo de Caso del Tribunal de Primera Instancia (SUMAC-TPI).

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales atinentes a la *Apelación*.

**II.**

El caso de marras tuvo su génesis el 2 de agosto de 2025 cuando el señor Herrera Roque presentó una *Petición* ante el TPI para que se le ordenara a la Oficina de Licencias de Armas del NPPR expedirle una licencia de portar armas, luego de que la agencia denegara su solicitud por incumplimiento con el Artículo 2.02 (d)(3) y 2.09 de la *Ley de Armas de Puerto Rico de 2020*, Ley Núm. 168 de 2019, según enmendada, 25 LPRA secs. 462a y 462h, (Ley Núm. 168-2019).[2] En síntesis, sostuvo que el NPPR le cursó una carta fechada el 12 de marzo de 2025, en la cual se le indicó que tenía convicciones por violación a delitos graves o su tentativa, así como violaciones a la Ley de Armas vigente o anteriores. El apelante afirma que presentó ante el NPPR el correspondiente escrito solicitando la reconsideración, en la cual incluyó su certificado negativo de antecedentes penales. Sostuvo, además, que cumple con los requisitos de la Ley de Armas. Indicó que el 30 de enero de 2007 se emitió una *Resolución* en el caso DJV2006-1024, ordenando la eliminación de su récord penal de las violaciones a la Ley de Armas y a la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2101 *et seq*. A pesar de contar con un certificado negativo de antecedentes penales, así como una corroboración del archivo digital del Buró Federal de Investigaciones que resultó negativa de delitos, le fue denegada la solicitud presentada.

El 22 de agosto de 2025, el NPPR presentó una *Moción Informativa y solicitando paralización de los procedimientos*, debido

---

[2] Véase Anejos de la entrada núm. 1 del SUMAC-TPI.

a que en ese momento el Tribunal Supremo de Puerto Rico tenía ante su consideración el caso ***Hernández Vázquez v. Negociado de la Policía de Puerto Rico***, CC-2024-0732, el cual trataba sobre los mismos asuntos del presente caso.[3]

El 25 de agosto de 2025, el señor Herrera Roque presentó una *Réplica a Moción solicitando paralización de los procedimientos,* en la cual solicitó la continuación de los procedimientos.[4]

El 2 de septiembre de 2025, el NPPR presentó una *Moción de Desestimación.*[5] En síntesis, sostuvo que la parte apelante no cumplió con los requisitos dispuestos en los Artículos 2.02 (d)(3) y 2.09 de la Ley Núm. 168-2019, *supra,* para obtener la licencia solicitada, específicamente por convicciones bajo los Artículos 6,7 y 11 de la Ley de Armas de Puerto Rico, Ley Núm. 17 del 19 de enero de 1951, 25 LPRA ant. secs. 416, 417 y 421, por delitos graves o sus tentativas, así como por violaciones a las disposiciones de dicha Ley, y por infracciones al Artículo 406 de la Ley de Sustancias Controladas, *supra,* sec. 2406. En ese sentido, el NPPR solicitó la desestimación de la demanda por cuanto la misma no exponía una reclamación que justificara la concesión de un remedio. Además, señaló que el apelante, como parte de los requisitos de su solicitud de licencia de armas, presentó un Certificado de Antecedentes Penales negativo. No obstante, sostuvo que, si bien se puede tramitar la eliminación de las convicciones en el Certificado de Antecedentes Penales que expide el NPPR para uso de la ciudadanía, lo cierto es que las convicciones pueden surgir de la investigación de los archivos digitales de cualquier agencia gubernamental de Puerto Rico, Estados Unidos o del extranjero de los cuales el NPPR pueda tener acceso.

---

[3] Véase la entrada núm. 9 del SUMAC-TPI y sus anejos.
[4] Véase entrada núm.11 del SUMAC-TPI.
[5] Véase entrada núm.14 del SUMAC-TPI.

Ese mismo día, el TPI emitió una *Orden* referente a la *Moción de Desestimación* presentada por el NPPR, en la cual ordenó a la parte apelante que se expresara en cuanto a la misma.[6] La parte apelante no presentó su oposición.

Consecuentemente, el 5 de septiembre de 2025, el TPI emitió la *Sentencia* apelada, en la cual desestimó la *Petición,* y confirmó la determinación administrativa del NPPR.[7] El foro apelado resolvió que, según se desprende del Artículo 2.02 de la Ley de Armas, *supra*, la presentación del Certificado Negativo de Antecedentes Penales constituye únicamente uno de los varios requisitos que se requieren para presentar la solicitud de la licencia de armas. La presentación de dicho certificado negativo no implica que el NPPR no deba o pueda seguir indagando e investigando al solicitante para verificar posibles convicciones anteriores, dentro o fuera de la jurisdicción de Puerto Rico, a las que pueda tener acceso, incluyendo los archivos del *National Crime Information Center* (NCIC), del *National Instante Criminal Background Check System* (NICS), el Sistema de Información de Justicia Criminal (SIJC-PR) y el Registro Criminal Integrado (RCI).

Además, determinó que el Artículo 2.09 de la Ley de Armas, *supra,* impone al NPPR la obligación de no expedir licencias de armas a cualquier persona que haya sido convicta, en Puerto Rico o cualquier otra jurisdicción de Estados Unidos, por delitos graves o sus tentativas, así como por violaciones a las disposiciones de la vigente Ley de Armas, *supra*, o anteriores, registradas en los archivos digitales. Concluyó que, la determinación de la agencia de denegar la solicitud de licencia de arma no fue arbitraria ni caprichosa, al haber resultado el señor Herrera Roque convicto de

---

[6] Véase entrada núm.15 del SUMAC-TPI.
[7] Véase entrada núm.16 del SUMAC-TPI.

delito grave y por violaciones de la Ley de Armas, supra, y en virtud de un mandato legislativo claro.

Se presentó una reconsideración a la sentencia, la cual fue denegada.

Inconforme, el 4 de octubre de 2025, la parte apelante recurrió ante este Tribunal presentando un recurso de *Apelación.* Mediante el mismo, le imputó al TPI la comisión de los siguientes errores:

> Erró el TPI al confirmar la determinación administrativa emitida determinando que el NPPR puede tomar en consideración y utilizar como fundamento para denegar la expedición de una licencia de armas convicciones eliminadas conforme a derecho cuando existe legislación específica que lo prohíbe.

> Erró el TPI al no determinar que el NPPR está obligado al notificar una denegatoria de licencias de armas como parte del debido proceso de ley incluir copia de los alegados archivos digitales que contienen la información en la cual bas[ó] tal determinación.

En síntesis, sostiene que las condenas eliminadas del expediente de antecedentes penales no pueden ser utilizadas para denegar la expedición de la licencia de armas. En cuanto al primer señalamiento de error, argumenta que la Ley 254 de 27 de julio de 1974, según enmendada, conocida como *Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales*, 34 LPRA sec. 1725 *et. seq.* (Ley Núm. 254-1974), la cual autoriza a la Policía de Puerto Rico a expedir el Certificado de Antecedentes Penales, carecería de propósito si el legislador autoriza la eliminación de antecedentes penales y expidiera su certificación negativa, y todavía pudiera ser utilizado por los tribunales. Asimismo, argumenta que la Ley Núm. 143 de 26 de agosto de 2014, según enmendada, conocida como *Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal*, 4 LPRA sec.533 *et. seq.* (Ley Núm. 143-2014), contiene un mandato legislativo claro e indiscutible dirigido al

Comité para que adopte las medidas necesarias para asegurar la eliminación total del SIJC de toda información sobre convicciones cuya eliminación haya sido ordenada por el Tribunal, incluyendo las memorias de sus computadoras. De este modo, alega el apelante nunca fue acusado ni convicto de delito, citando a **Pueblo v. Ortiz Martínez**, 123 DPR 820, 831 (1942). Sostiene, además, que el propósito legislativo de los Artículos 2.02(d) y 2.09 de la Ley de Armas, *supra*, no fue permitir al NPPR utilizar convicciones legítimamente eliminadas para denegar la expedición de una licencia de armas. En la alternativa, argumenta que existe un conflicto entre las leyes especiales, específicamente entre la Ley Núm. 254-1974, *supra*, la Ley 143-2014, *supra*, y la Ley 168-2019, *supra*. Por otra parte, en cuanto a su segundo señalamiento de error, sostiene que la agencia no cumplió con las garantías mínimas del debido proceso de ley en su vertiente procesal, particularmente en lo relacionado con la notificación adecuada y el derecho del apelante a examinar el expediente del caso y la evidencia presentada en su contra.

El 30 de octubre de 2025, la parte apelada presentó su *Alegato en Oposición,* en el que solicitó que confirmemos la *Sentencia* apelada. En síntesis, sostiene que el Artículo. 2.09 de la Ley de Armas, *supra*, excluye expresamente de la obtención de una licencia de armas a aquellas personas que hayan sido condenados por violaciones a la Ley de Armas vigente o a las leyes de armas anteriores. Argumenta que el NPPR actuó correctamente al denegar la solicitud, conforme a los Artículos 2.02 (d)(3), (4) y 2.09 de la Ley de Armas. Además, sostiene que, en cuanto a las exigencias del debido proceso de ley, la denegatoria de la solicitud de licencia de armas no surge de un proceso adjudicativo ante la agencia que active las disposiciones de la Ley Núm. 38 de 2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo

Uniforme del Gobierno de Puerto Rico", 3 LPRA sec. 9601 *et. seq.* Afirma que la Ley Núm. 168-2019, *supra,* no impone al NPPR obligación de proveer al apelante toda la evidencia o el análisis utilizado para denegar su solicitud, tratándose así, de un proceso adjudicativo informal. En apoyo a su argumentación en cuanto al segundo señalamiento de error, cita el caso de **Adorno Cabán v. ELA**, KLAN202300682, sentencia de este tribunal emitida el 25 de septiembre de 2023.

**III.**

**A.**

Según consagra la Segunda Enmienda de la Constitución de Estados Unidos, "siendo necesario para la seguridad de un estado libre, una milicia bien organizada, no se coartará el derecho del pueblo a poseer y portar armas". Emda. Art. II, Const. EE. UU., LPRA, Tomo 1, ed. 2016, pág. 186. Por medio de la doctrina de incorporación selectiva y la Decimocuarta Enmienda de la Constitución de Estados Unidos, el Tribunal Supremo de Estados Unidos ha extendido ese derecho a los estados y a los ciudadanos estadounidenses de los territorios, lo cual incluye a Puerto Rico. **Pueblo v. Rodríguez López et al.**, 210 DPR 752, 766 (2022). Así, ha dispuesto que los derechos de posesión y portación de armas cortas no pueden ser limitados de forma absoluta. Íd., págs. 767; **McDonald v. City of Chicago III**, 561 US 742 (2010).

Ahora bien, al interpretarse la Segunda Enmienda, el Tribunal Supremo de Estados Unidos ha dejado claro que ese derecho no es ilimitado, ni absoluto, ni significa tener derecho a poseer y portar cualquier arma de cualquier manera y para cualquier propósito. Íd., págs. 767-768; **Rolón Martínez v. Supte. Policía**, 201 DPR 26, 37 (2018). Véase, además, **McDonald v. City of Chicago III**, supra, y **District of Columbia v. Heller**, 554 US 570, 626 (2008). Por ello,

ha quedado establecido que el Estado tiene facultad para regular la posesión, portación y venta de armas de fuego. Íd.

En *District of Columbia v. Heller*, supra, el Tribunal Supremo de Estados Unidos identificó la prohibición de posesión de armas a personas convictas por delitos graves como una de las limitaciones tradicionales a este derecho constitucional que se presumen válidas.

En *Pueblo v. Rodríguez López et al.,* *supra,* el Tribunal Supremo de Puerto Rico, a manera de ejemplo y sin intención de presentar un listado taxativo, aludió como válidas "las medidas que prohíban la posesión de armas a las personas incapacitadas mentalmente o **convictas por delitos graves**; en lugares sensitivos, como las escuelas o edificios de gobierno, o que impongan ciertas cualificaciones para la venta de armas. *Pueblo v. Rodríguez López et al.,* *supra,* en las págs. 768-769. Énfasis nuestro.

A tenor con dicha determinación judicial federal, la Ley Núm. 168-2019, supra, fue promulgada para, entre otras disposiciones, reglamentar los requisitos generales para solicitar y obtener una licencia de armas en nuestra jurisdicción.

**B.**

Por otro lado, la Ley Núm. 168-2019, *supra,* fue aprobada con el propósito de "salvaguardar y proteger los derechos de los ciudadanos americanos residentes en Puerto Rico, mediante una nueva Ley de Armas que sea consistente con la Segunda Enmienda de la Constitución de Estados Unidos [y] con las decisiones del Tribunal Supremo Federal [...]". Véase la Exposición de Motivos de la Ley Núm. 168-2019. Con ello, la Legislatura procuró establecer claramente que en Puerto Rico el portar y poseer armas de fuego es un derecho fundamental e individual, como en el resto de Estados Unidos de Norteamérica. Íd.

De conformidad con esta ley, la Oficina de Licencias de Armas del NPPR es la entidad encargada de expedir las licencias de armas, sin las cuales no se puede poseer o portar un arma de fuego en Puerto Rico. Artículo 1.02 de Ley Núm. 168 de 2019, *supra*, sec. 461a. Previo a la emisión de una licencia, esta oficina debe cerciorarse de que la persona interesada en poseer o portar un arma de fuego cumple con una serie de requisitos. Fundamentalmente, esta licencia permite al ciudadano o ciudadana la posesión, tenencia y transportación de armas, con sujeción a ciertos requisitos relacionados con el número, modo de almacenaje, transportación, función gubernamental que desempeña, si alguna, y otros. ***Pueblo v. Rodríguez López et al.***, *supra*.

Los Artículos 2.01 al 2.16 de la Ley Núm. 168-2019, *supra* secs. 462a-462o, rigen la expedición de licencias de armas en Puerto Rico. En lo pertinente, el Artículo 2.02, *supra,* sec. 462a, detalla los criterios que debe cumplir una persona interesada en obtener una licencia de armas. Específicamente, el inciso (a)(2) del referido artículo establece expresamente, entre otros requisitos lo siguiente:

> Tener un expediente negativo de antecedentes penales y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09 de esta Ley o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.

Asimismo, el Artículo 2.02 (d)(3), *supra*, dispone que una vez se acepte la solicitud para expedir una licencia de armas, "la Oficina de Licencias de Armas, determinará y certificará por escrito si el peticionario cumple o no, con los requisitos establecidos". Así, además, le impone a la agencia el deber de realizar una investigación exhaustiva de los antecedentes penales del solicitante. El referido inciso dispone los mecanismos necesarios para lograrlo;

> [M]ediante **una investigación en los archivos digitales de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad**

**extranjera o internacional a la que pueda tener acceso,** incluyendo los archivos del National Crime Information Center (NCIC), del National Instant Criminal Background Check System (NICS), el Sistema de Información de Justicia Criminal (SIJC-PR) y el Registro Criminal Integrado (RCI). Íd. Énfasis suplido.

Además, los incisos (b) y (c) del Artículo 2.02 de la Ley Núm. 168-2019, *supra*, especifican la información y los documentos que deben incluirse en la solicitud para la expedición de una licencia de armas. Entre estos documentos se encuentran el certificado de nacimiento o pasaporte vigente, copia de la licencia de conducir, dos (2) fotografías de la persona, un certificado negativo de antecedentes penales expedido no más de treinta (30) días previos a la fecha de la solicitud, entre otros. Íd.

De conformidad, el Artículo 2.09 de la Ley Núm. 168-2019, *supra*, sec. 462h, fijó los fundamentos para denegar expedir licencias de armas. En particular, el artículo prescribe:

> La Oficina de Licencias de Armas **no expedirá licencia de armas,** o de haberse expedido se revocará, la licencia de armas de cualquier persona **que haya sido convicta**, en Puerto Rico, en cualquier otra jurisdicción estadounidense **de cualquier delito grave o su tentativa**, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica, según tipificada en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, o conducta constitutiva de acecho, según tipificada en la Ley 284-1999, según enmendada, ni por conducta constitutiva de maltrato de menores, según tipificada en la Ley 246-2011, según enmendada, "Ley para la Seguridad, Bienestar y Protección de Menores". Énfasis suplido.

Respecto al proceso de adjudicación, una vez sometida la solicitud de licencia de armas, la agencia administrativa debe completar una investigación y tomar una decisión sobre la expedición o denegatoria de la licencia en un término no mayor de treinta (30) días naturales, contados a partir de la fecha que se presentó la solicitud. Inciso d(2) del Artículo 2.02, *supra*. Para ello, accederá a los archivos digitales de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o

internacional a la que pueda tener acceso, incluyendo los archivos del National Crime Information Center (NCIC), del National Instant Criminal Background Check System (NICBCS), el Sistema de Información de Justicia Criminal y el Registro Criminal Integrado. Luego, certificará por escrito si la persona cumple o no, con los requisitos establecidos para la obtención de la licencia. Íd., inciso d(3).

De resultar la investigación realizada por la Oficina de Licencias de Armas de los archivos digitales en una determinación de que la persona no cumple con todos los requisitos establecidos en la Ley Núm. 168-2019, *supra*, no le será concedida la licencia de armas. Sin embargo, esto no impide que la persona pueda solicitarla nuevamente en un futuro. Íd., inciso d(4).

En cuanto al proceso de reconsideración, la persona interesada en obtener una licencia de armas podrá solicitar a la Oficina de Licencias de Armas una reconsideración dentro de los próximos quince (15) días naturales siguientes a la denegatoria de la otorgación de la licencia, y la agencia tendrá quince (15) días naturales para emitir una determinación y atender la misma. Ahora bien, de sostenerse la denegatoria, o de no emitir ninguna determinación respecto a la reconsideración, la persona podrá acudir al Tribunal de Primera Instancia para la revisión de la decisión administrativa. Íd., inciso d(4).

### C.

La Ley Núm. 254-1974, *supra*, estableció el marco legal que faculta a la Policía de Puerto Rico a expedir certificados de antecedentes penales y a promulgar la reglamentación necesaria para la eliminación de ciertas convicciones del expediente penal. En el caso de delitos graves, siempre y cuando una persona exconvicta no esté sujeta al "Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores" ni al "Registro de

Personas Contra Menores" ni al "Registro de Personas Convictas por Corrupción", podrá solicitar en el Tribunal de Primera Instancia una orden para que se elimine la convicción del certificado de antecedentes penales. Entre los requisitos a cumplir se encuentran el que hayan transcurrido cinco (5) años desde que se cumplió la sentencia y la persona no haya cometido otro delito; tenga buena reputación en la comunidad; y se haya sometido a la muestra requerida por la Ley del Banco de Datos de ADN, de estar sujeta a ello. Art.4 Ley Núm.254-1974, 34 LPRA sec.1725. Por su parte, el Artículo 7 de la Ley Núm. 254, *supra,* dispone que deberá expedirse un certificado negativo cuando de los archivos de la Policía no surja expediente abierto alguno. De la lectura del estatuto evidencia que, una vez cumplido los requisitos legales, el Negociado queda autorizado a eliminar del certificado de antecedentes penales las condenas por los delitos graves y menos graves. El Tribunal Supremo ha expresado que la intención de legislativa al promulgar el estatuto fue "**potenciar la inserción de los exconvictos en la fuerza laboral y su consiguiente rehabilitación mediante la eliminación de convicciones previas transcurrido el término dispuesto en ley.**" Énfasis suplido. ***Garib Bazaín v. Hosp. Aux. Mutuo, et al.***, 204 DPR 601, 622 (2020).

### D.

La Ley Núm. 143-2014, *supra*, fue aprobada con el propósito fundamental de implementar un sistema tecnológico y un procedimiento uniforme que garantice el intercambio efectivo de información entre las entidades gubernamentales del Gobierno de Puerto Rico vinculadas a la seguridad pública del país, así como aquellas que se encuentran estrechamente relacionadas, a fin de maximizar el funcionamiento del SIJC. 4 LPRA sec. 522 nota. En esencia, pretende asegurar a la ciudadanía que las agencias

gubernamentales responsables de combatir la criminalidad cumplen su función de la manera más eficiente posible. Íd.

La mencionada pieza legislativa dispone que corresponde al Departamento de Justicia, al Negociado de Policía de Puerto Rico, al Departamento de Corrección y Rehabilitación y al Poder Judicial, y a los demás componentes de la Junta Ejecutiva del SIJC, a asegurarse que el sistema tecnológico y procedimiento uniforme provea la siguiente información de naturaleza criminal, tanto de delitos graves como menos graves, entre otras:

a. Denuncias
b. Órdenes de Arresto
c. Requisitorias y Contrarequisitorias
d. Determinaciones de causa en todas las etapas del procedimiento criminal, incluyendo vista de determinación de causa para arresto y vista preliminar
e. Sentencias
f. Minutas de vista de seguimiento en las probatorias
g. Órdenes de Protección vigentes h. Fugas de las instituciones carcelarias del país i. Determinaciones de Causa en alzada
j. Desacatos
k. Determinaciones sobre improcesabilidad y/o inimputabilidad al amparo de las Reglas 240 y 241 de las de Procedimiento Criminal
l. Revocaciones de Probatoria
m. Órdenes de allanamiento expedidas al amparo de las Reglas 229 a la 233 de las de Procedimiento Criminal
n. Datos de todas las personas que se encuentran bajo la supervisión de la Oficina con Antelación al Juicio
o. Datos o características de identificación física, tales como: fotos, cicatrices, tatuajes, marcas, etc., de toda aquella persona que sea imputada y/o convicta de delito y la información de su proceso penal esté almacenada en SIJC
p. Información de contacto o ubicación, tal como las últimas tres direcciones conocidas, de los convictos de delito, y de toda aquella persona que represente un riesgo para la seguridad sea imputada y/o convicta de delito y la información de su proceso penal esté almacenada en SIJC
q. Toda la información contenida en el Registro de Ofensores Sexuales. 4 LPRA sec. 533e (énfasis suplido).

En cuanto a los datos registrados en el sistema de información, establece lo siguiente:

[...]

El Comité tomará todas las medidas necesarias para asegurar al máximo posible la seguridad y corrección de toda aquella

información que sea recopilada a través del Sistema y para la protección individual de los derechos de privacidad de acuerdo con los principios constitucionales del Estado Libre Asociado. Además, tomará todas las medidas necesarias para asegurarse que no se tendrá en el Sistema de Información de Justicia Criminal dato alguno relativo a la afiliación o actividad política de persona alguna. Asimismo, tomará todas las medidas necesarias para asegurarse de que todo dato relativo a convicciones cuya eliminación del r[é]cord penal de una persona haya sido ordenado por un Tribunal competente sea efectiva y totalmente eliminada del Sistema de Información de Justicia Criminal, incluyendo, pero sin que esto se entienda como una limitación, las memorias de cualesquiera computadoras utilizadas por el Sistema. 4 LPRA sec. 533e

En otras palabras, la Ley Núm. 143-2014, *supra*, implementa un sistema uniformado que facilita el intercambio eficiente de información entre las agencias gubernamentales de Puerto Rico relacionadas con la seguridad pública y les impone la obligación de divulgar cualquier dato relativo a condenas por delitos, ya sean graves o menos graves, incluyendo las determinaciones de causa en todas las etapas del procedimiento criminal y las correspondientes sentencias. No obstante lo anterior, el Comité está obligado a tomar todas las medidas necesarias para garantizar que cualquier información sobre condenas, cuya eliminación haya sido ordenada por un tribunal competente, sea completamente eliminada del SIJC.

**IV.**

En el caso ante nuestra consideración, la parte apelante plantea, como primer señalamiento de error, que el TPI erró al confirmar la determinación administrativa. Sostiene que, en lo relativo al NPPR, este no puede tomar en consideración ni utilizar como fundamento para denegar la expedición de una licencia de armas convicciones que hayan sido eliminadas conforme a derecho,

máxime, cuando existe legislación específica que lo prohíbe. En la alternativa, argumenta que existe un conflicto entre las leyes especiales, específicamente entre la Ley Núm. 254-1974, *supra*, y entre la Ley 143-2014, *supra*, y la Ley 168-2019, *supra*.

Como segundo señalamiento de error, sostiene que el TPI erró al no determinar que el NPPR está obligado, cuando notifica una denegatoria de licencias de armas como parte del debido proceso de ley, a incluir copia de los alegados archivos digitales que contienen la información en la que basó dicha determinación.

Por su parte, el NPPR solicita que se confirme la determinación del TPI, toda vez que el señor Herrera Roque no cumplió con los requisitos dispuestos en los Artículos 2.02 (d)(3) y 2.09 de la Ley Núm. 168-2019, *supra*, los que excluye expresamente la obtención de una licencia de armas a aquellas personas que hayan sido condenados por violaciones a dicha ley o leyes de armas anteriores. Asimismo, argumenta que la eliminación de antecedentes penales no implica que el NPPR carezca de autoridad para considerar las convicciones previas del señor Herrera Roque al momento de realizar la investigación correspondiente, según establecida en la Ley Núm. 168-2019, *supra*. Por consiguiente, sostiene que el resultado de la investigación realizada por el NPPR mediante una búsqueda en los archivos digitales oficiales autorizados por dicha ley constituye un criterio adicional que el legislador facultó a la agencia a considerar para determinar si el peticionario de una licencia de armas cumple con el requisito de no haber sido convicto por alguno de los delitos enumerados en el Artículo 2.09 de la Ley Núm. 168- 2019, *supra*. Además, argumenta que, en cuanto a las exigencias del debido proceso de ley, la denegatoria de la solicitud de licencia de armas no surge de un proceso adjudicativo ante la agencia que active las disposiciones de la LPAU, *supra*. Afirma que la Ley Núm. 168-2019, *supra*, no impone

al NPPR la obligación de proveer al apelante toda la evidencia o el análisis utilizado para denegar su solicitud, tratándose así, de un proceso adjudicativo informal.

Por estar íntimamente relacionados ambos señalamientos, procedemos a discutirlos conjuntamente. Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incidió en los errores señalados.

De acuerdo con las disposiciones de la Ley Núm. 168-2019, *supra*, el señor Herrera Roque no cumple con los requisitos que le permitirían ser acreedor del derecho a una licencia de posesión y portación de armas. A tenor con la normativa jurídica expuesta precedentemente, el estatuto es claro: el NPPR está impedido de expedir una licencia de armas a favor de una persona que haya sido convicta, en Puerto Rico o en cualquier otra jurisdicción estadounidense, <u>de cualquier delito grave o su tentativa</u>, entre otros delitos. De igual modo, la determinación de conceder o denegar la licencia de armas no se circunscribe únicamente a si la persona posee un certificado negativo de antecedentes penales. En esa misma línea, el Tribunal Supremo de Puerto Rico, ha tenido ante su consideración casos similares en los que ha validado que se tome en cuenta el historial delictivo, incluso el violento, del solicitante. Véase, **Rivera Pagán v. Supte. Policía**, 135 DPR 789 (1994). Lo anterior, con el fin de adelantar la intención legislativa de priorizar la seguridad pública y protección a la vida.

Asimismo, al analizar en conjunto las legislaciones aplicables, quedó demostrado que la intención legislativa que autoriza al NPPR eliminar del certificado de antecedentes penales las condenas por delitos graves y menos graves respondió a la necesidad de ofrecerles a las personas convictas otra oportunidad en el aspecto laboral como en el personal. Lo anterior, no equivale a concederle el derecho de poseer nuevamente un arma de fuego.

Del mismo modo, no encontramos conflicto alguno entre las leyes especiales, específicamente entre la Ley Núm. 254-1974, *supra*, y entre la Ley 143-2014, *supra*, y la Ley 168-2019, *supra*, esto a diferencia de lo que argumenta la parte apelante. En cuanto a la Ley Núm. 254-1974, *supra*, el Tribunal Supremo ha expresado que la intención de legislativa al promulgar el estatuto fue **"potenciar la inserción de los exconvictos en la fuerza laboral y su consiguiente rehabilitación mediante la eliminación de convicciones previas transcurrido el término dispuesto en ley."** Énfasis suplido. ***Garib Bazaín v. Hosp. Aux. Mutuo, et al.***, *supra*.

Si bien es cierto que, la Ley Núm. 143-2014, *supra*, dispone que debe eliminarse de los sistemas toda información relacionada con convicciones eliminadas por órdenes judiciales, la disposición especial Ley Núm. 168-2019, *supra*, no adopta esa misma política en cuanto a la concesión de licencia de armas. Por el contrario, impone al NPPR el deber de realizar una investigación exhaustiva de los antecedentes penales del solicitante, recurriendo a la información contenida en cualesquiera de los registros gubernamentales tanto estatales como federales de los que tenga acceso. Por consiguiente, concluir que las disposiciones vigentes de la Ley Núm.168-2019, *supra*, no pueden aplicarse debido a determinaciones judiciales basadas exclusivamente en la legislación vigente en su momento sería improcedente y pasaría por alto los desarrollos posteriores del ordenamiento jurídico aplicable. En vista de ello, y en relación con la conservación de información referente a delitos previos, en ***Santiago Cora v. ELA,*** 2025 TSPR 44, 215 DPR _____ a las págs. 19-20, el Tribunal Supremo de Puerto Rico resolvió que "[d]e ese modo, se logra mantener una base de datos robusta que le permite a las autoridades ejercer cabalmente su imprescindible labor investigativa para atajar la criminalidad". A

tenor con las expresiones de nuestro más alto foro, el NPPR tiene el deber de velar por la seguridad pública.

Por otro lado, acogemos el argumento de que el NPPR no tiene la obligación de incluir determinaciones de hecho ni conclusiones de derecho al denegar una solicitud de licencia de armas. Ello se debe a que dicho trámite no constituye un proceso adjudicativo formal en virtud de la LPAU, *supra*. Por su naturaleza, se trata de un proceso informal, reglamentado específicamente por la ley especial Ley Núm. 168-2019, *supra*, la cual únicamente requiere que el NPPR le notifique al solicitante si cumple o no con los requisitos de la misma.

Nótese, que un panel hermano de este Tribunal, en el caso ***Francisco Manuel Vargas Ramos v. ELA, et al.,*** KLAN202400763, resuelto el 30 de septiembre de 2024, confirmó la determinación del foro primario por hechos casi idénticos a los del presente caso. Posteriormente, el peticionario acudió al Tribunal Supremo de Puerto Rico mediante recurso de *certiorari*. El 24 de enero de 2025, el Tribunal Supremo emitió una *Resolución* en la que dispuso que "examinada la petición de *certiorari*, se declara no ha lugar".[8]

Resolvemos que el TPI no incidió en su determinación ni cometió los errores imputados por el apelante. Por lo anterior, corresponde confirmar la *Sentencia* apelada.

**V.**

A tenor con los fundamentos pormenorizados precedentemente, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] CC-2024-0754